J-S50043-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| E.W.H. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| S.M. AND M.C., JR. | : | No. 794 WDA 2019 |

Appeal from the Order Entered April 18, 2019
In the Court of Common Pleas of Allegheny County Family Court at
No(s):  FD 17-3448-010

BEFORE:   LAZARUS, J., MURRAY, J., and COLINS, J.[*]

MEMORANDUM BY COLINS, J.:                    **FILED OCTOBER 16, 2019**

Appellant, E.W.H. ("Mother"), *pro se*, appeals from the order dated April 18, 2019, granting S.M. ("Paternal Grandmother") primary physical custody and sole legal custody of Mother's biological child, M.C. ("Child"), born December 2016, and granting partial physical custody to Mother and to Child's biological father, M.C., Jr. ("Father").  We affirm.

The facts underlying this appeal are as follows.  Mother is currently incarcerated at the State Correctional Institution ("SCI") at Cambridge Springs and will not be released until 2037 at the earliest.  Trial Court Opinion ("TCO"), filed June 25, 2019, at 5.  Father is also currently incarcerated.  ***Id.***

_____

[*] Retired Senior Judge assigned to the Superior Court.

Prior to Mother's incarceration, Paternal Grandmother, with the consent of Mother,[1] filed a Third Party Complaint for Confirmation of Custody of the Child.

The Complaint alleged that Father was incarcerated and that Mother would soon be incarcerated and that Paternal Grandmother was willing and able to provide care for the Child.

Mother accompanied Paternal Grandmother to the courthouse to file the Complaint.

At the time of presentation of the Complaint, both Mother and Father were incarcerated.

On May 25, 2017, the [c]ourt confirmed custody of the Child with Paternal Grandmother.

Neither Mother nor Father appealed the Order or sought Modification of the Order entered on May 25, 2017.

Paternal Grandmother has been the sole caregiver for the Child since the confirmation of custody.

The Child is autistic and has special needs. Paternal Grandmother is meeting those needs.

For a time after custody was confirmed, Paternal Grandmother was transporting the Child to visit Mother at [SCI] Cambridge Springs and Father at SCI Greene on the bus as she does not own a vehicle.

Mother also has nearly daily contact by telephone with Paternal Grandmother and the Child.

There has been a breakdown in the relationship between Mother and Paternal Grandmother and Paternal Grandmother is no longer willing to transport the Child to visit Mother [SCI] Cambridge Springs.

From time to time, relatives of Mother have transported the Child to visit Mother at [SCI] Cambridge Springs.

---

[1] Mother's signature appears on the third party complaint for confirmation of custody as "Respondent A." Complaint, 4/25/2017, at 7.

*Id.* at 5-6 (some formatting); *see also* N.T., 4/18/2019, at 7 (Mother testified that she accompanied Paternal Grandmother to the courthouse to file the complaint).

In April 2019, Mother filed a petition for special relief, requesting that primary physical custody of Child be given to Mother's mother, T.H. ("Maternal Grandmother"), and shared legal custody of Child be given to Father, Maternal Grandmother, and Mother, or, in the alternative, asking the trial court to reinstate Mother's direct appeal rights *nunc pro tunc* to appeal from the custody order of May 25, 2017.[2]

Following a hearing on April 18, 2019, the trial court entered an order keeping primary physical custody and sole legal custody of Child with Paternal Grandmother and allowing Father and Mother to have partial physical custody of Child. While the order allowed Father's visitation to be "arranged by Paternal Grandmother[,]" the order required Mother's visitation to occur "monthly at SCI Cambridge Springs pursuant to the visitation policies at SCI Cambridge Springs." Order, 4/18/2019, at 1 (not paginated). The trial court also ordered Maternal Grandmother to transport Child to and from Mother's visitation and ordered Maternal Grandmother to have visitation with Child "on

---

[2] "Maternal Grandmother has never petitioned the [c]ourt for any form of partial custody or visitation and has had minimal contact with the Child." TCO, June 25, 2019, at 7. Furthermore, Mother appears to have abandoned the contention in her petition that Maternal Grandmother should have shared legal custody of Child. *See* Mother's Brief at 16-35.

the first and third Saturday of each month from 10:00 A.M. until 8:00 P.M.[,]"

with "overnight and extended visitation" "[u]pon agreement of the parties[.]"

*Id.* at 2 (not paginated). Mother thereafter filed this timely appeal.[3]

Mother now presents the following issues for our review:

I.    Did the [t]rial [c]ourt err in abusing its discretion in failing to grant [Mother]'s Leave to Appeal Nunc Pro Tunc from the Orders of Court based upon the [t]rial [c]ourt failing to thoroughly consider the violation of [Mother]'s procedural rights, considering but not limited to the following factors:

a. Trial [c]ourt did not notify [Mother], an inmate, that she had a right to request to be present at the hearing.

b. Trial [c]ourt did not arrange for her transportation to the hearing.

c. Fatal defect was discovered that [Mother] was not informed of when the hearing was held[?]

II.    Did the [t]rial [c]ourt err and abuse its discretion in accepting as true [Paternal Grandmother's] unsupported testimony of the care that she provides to the minor child, while denying [Mother] direct examination or the opportunity to call witnesses[?]

[III.] Did the [t]rial [c]ourt err and abuse its discretion when it did not produce [Father?]

[IV.] Did the [t]rial [c]ourt err and abuse its discretion in failing to grant shared custody to [Mother] based upon [t]rial [c]ourt failing to consider factors established in 23 Pa. C.S. § 5328 (a), et seq., and relevant case law[?]

Mother's Brief at 5-6 (re-ordered to facilitate disposition) (suggested answers

omitted).

_____

[3] Appellant filed her statement of errors complained of on appeal on June 6, 2019. The trial court entered its opinion on June 25, 2019.

We begin by acknowledging our scope and standard of review in custody cases:

In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

*D.K. v. S.P.K.*, 102 A.3d 467, 478 (Pa. Super. 2014) (quoting *J.R.M. v. J.E.A.*, 33 A.3d 647, 650 (Pa. Super. 2011)).

Mother first contends that the trial court erred by denying her petition to appeal *nunc pro tunc* from the custody order entered May 25, 2017. Mother's Brief at 16-24. However, only a party who has been aggrieved by an appealable order may appeal to this Court. Pa.R.A.P. 501. Mother was not aggrieved by the May 25, 2017, custody order. That initial custody order granting Paternal Grandmother custody of Child was entered with Mother's consent, and Mother had accompanied Paternal Grandmother to the courthouse to file the complaint. Complaint, 4/25/2017, at 7; N.T., 4/18/2019, at 7; TCO, June 25, 2019, at 5. No additional relief was requested in the complaint. Accordingly, Mother received what she wanted from the 2017 custody order and, consequently, could not have appealed from it. *Ergo*,

there was no basis for the trial court to grant a petition to appeal *nunc pro tunc* from an order which could not have been appealed by Mother in the first place.

Additionally, for Mother's second issue, she never asked the trial court to allow her to present witnesses during the 2019 hearing. Since she never raised this issue before the trial court, it is waived. Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal.").

Similarly, Mother's claim that the trial court should have "produced" Father is waived for failure to raise it during the 2019 hearing. ***Id.*** Assuming it were not waived, the trial court "submit[s] that Father's presence would not have affected the outcome of the matter." TCO, June 25, 2019, at 12. While Mother argues that the trial court "cannot be certain" that this belief is true, Mother fails to elaborate as to how Father's presence would have altered the outcome. Mother's Brief at 34. To the extent that Father should have been present, his absence thereby was harmless error.

As for Mother's contention that she was not permitted to ask Paternal Grandmother any questions, when she interrupted Paternal Grandmother's testimony to inquire of the trial court if she could ask Paternal Grandmother a question, which the trial court allowed, the only query she made was a procedural question about the date of the 2017 custody hearing. N.T., 4/18/2019, at 43-44. She never indicated to the trial court that she wished to cross-examine Paternal Grandmother on any other subject. Accordingly,

any claim that she did not have the opportunity to ask Paternal Grandmother any questions is also waived. Pa.R.A.P. 302(a).

To the extent that Mother is challenging Paternal Grandmother's credibility, "with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand." *D.K.*, 102 A.3d at 478. In the current action, the trial court "found Paternal Grandmother to be a credible witness[,]" as "[s]he gave very detailed testimony about the special needs of the Child as well as her relationship with Mother." TCO, June 25, 2019, at 8. As the trial court "viewed and assessed" Paternal Grandmother "first-hand[,]" we are obligated to defer to its finding that Paternal Grandmother's testimony about the care she provides to Child was credible, and we cannot and will not substitute our judgment for that of the trial court. *See D.K.*, 102 A.3d at 478.

Mother's final challenge is that the trial court failed to consider the custody factors enumerated in 23 Pa.C.S. § 5328(a) when it entered the modified custody order dated April 18, 2019. Mother's Brief at 28. However, Mother fails to address which of the 16 factors listed in that statute were not considered or were improperly analyzed by the trial court. *See id.* at 28-31.

Even if her claim were more specific, it would still fail, because the record reflects that the trial court did examine each of the factors in 23 Pa.C.S. § 5328(a). According to 23 Pa.C.S. § 5328(a)(1):

> In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of

the child, including . . . (1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

The trial court addressed this factor, as follows:

It is clear from the testimony presented at the hearing the Paternal Grandmother, has been responsible for ensuring that the Child has developed and maintained a bond and relationship with both parents. Paternal Grandmother (who does not have a car) has transported the Child by bus to visit her parents in their respective correctional institutions. Even after the relationship between Mother and [P]aternal Grandmother deteriorated, Paternal Grandmother has allowed others to transport the Child to visit her Mother and has permitted [Child] to continue almost daily telephone contact with her Mother.

TCO, June 25, 2019, at 9-10.

The second factor – "[t]he present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child" – is inapplicable to this appeal, as there are no allegations of abuse against Child. 23 Pa.C.S. § 5328(a)(2).

The third custody factor is "[t]he parental duties performed by each party on behalf of the child." *Id.* § 5328(a)(3). The trial court asserted that "Paternal Grandmother has performed the parental duties for the Child for nearly her entire life." TCO, June 25, 2019, at 10. The trial court also noted that Mother and Father are "unable to provide daily care for the Child" due to their incarceration. *Id.* at 5.

For the fourth custody factor, "[t]he need for stability and continuity in the child's education, family life and community life[,]" 23 Pa.C.S. § 5328(a)(4), the trial court stated: "Obviously, neither parent can provide this as they are both incarcerated and will be incarcerated until well after the Child reaches the age of majority. The evidence shows that Paternal Grandmother provides the needed stability and continuity in [C]hild's education, family life and community life." TCO, June 25, 2019, at 10.

For the fifth custody factor – "[t]he availability of extended family[,]" 23 Pa.C.S. § 5328(a)(5), the trial court acknowledged that Mother had extended family but noted that "Mother's extended family has had little contact with the Child, despite Paternal Grandmother's willingness to allow this [contact]." TCO, June 25, 2019, at 10.

The sixth custody factor, concerning a child's sibling relationships, is irrelevant to the current action, because Child has no siblings. 23 Pa.C.S. § 5328(a)(6). Likewise, the seventh custody factor about a child's preferences is immaterial, as Child is barely verbal and unable to articulate his choice. *Id.* § 5328(a)(7). The eighth factor, "[t]he attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm[,]" is also inconsequential, because there are no allegations that any party has attempted to "turn" Child against either of his biological parents. *Id.* § 5328(a)(8).

The ninth custody factor is "[w]hich party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs." *Id.* § 5328(a)(9). The trial court asserted: "Paternal Grandmother is more likely to do this. Both parents are incarcerated and physically unable to parent the child on a daily basis." TCO, June 25, 2019, at 11. Similarly, for the tenth custody factor, "[w]hich party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child[,]" 23 Pa.C.S. § 5328(a)(10), the trial court reiterated, "Paternal Grandmother is the only one that can do this, due to the incarceration of both parents." TCO, June 25, 2019, at 11.

The eleventh custody factor is "[t]he proximity of the residences of the parties." 23 Pa.C.S. § 5328(a)(11). The trial court considered this factor, but explained that it is "not relevant as both parents are incarcerated in different correctional facilities." TCO, June 25, 2019, at 11.

For the twelfth custody factor, "[e]ach party's availability to care for the child or ability to make appropriate child-care arrangements[,]" 23 Pa.C.S. § 5328(a)(12), the trial court repeated that "Paternal Grandmother is the only one who can do this, due to the incarceration of both parents." TCO, June 25, 2019, at 11.

The next factor is "[t]he level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party." 23 Pa.C.S.

§ 5328(a)(13). The trial court acknowledged that "[t]here is certainly high conflict between Mother and Paternal Grandmother" but still found that "Paternal Grandmother is still willing for the Child to maintain a relationship with her Mother." TCO, June 25, 2019, at 11.

The fourteenth and fifteenth factors concerns the parties' histories of drug or alcohol abuse and mental and physical health, respectively, but these factors do not affect the current action, as there is no evidence that any of the parties have a history of substance abuse or mental or physical health issues. *See* 23 Pa.C.S. § 5328(a)(14)-(15); TCO, June 25, 2019, at 11-12.

The final custody factor is a "catch-all" that allows the trial court to consider "[a]ny other relevant factor." 23 Pa.C.S. § 5328(a)(16). For this factor, the trial court wrote:

> What is relevant here is that Paternal Grandmother has been the primary caregiver for this Child for nearly the Child's entire life. Grandmother received custody of the Child with the knowledge and assistance of Mother. Mother now seeks to change this due to a breakdown in the relationship with Paternal Grandmother.

TCO, June 25, 2019, at 12.

Hence, the record demonstrates that Mother's contention that the trial court failed to consider all of the custody factors enumerated in 23 Pa.C.S. § 5328(a) is erroneous. Mother's Brief at 28.

As for Mother's repeated assertion throughout her brief that the 2019 custody order was not in the best interests of Child, Mother's Brief at 15, 20, 24, 29-30, 35, we agree that "[o]ur paramount concern and the polestar of our analysis in this case, and a legion of prior custody cases, is the best

interests of the child." **S.M. v. J.M.**, 811 A.2d 621, 623 (Pa. Super. 2002) (citation and internal brackets and quotation marks omitted); **see also** 23 Pa.C.S. § 5328(a) ("[i]n ordering any form of custody, the court shall determine the best interest of the child"). However, it is indisputable that Mother and Father are unable to provide daily care for Child and cannot have primary physical custody of Child. TCO, June 25, 2019, at 5. Mother and Father do not know Child's day-to-day needs well enough "to make major decisions on behalf of [C]hild, including, but not limited to, medical, religious and educational decisions." 23 Pa.C.S. § 5322 (definition of "legal custody"). Thus, it is in the best interests of Child that they do not have shared legal custody of Child, and we conclude that the trial court did not abuse its discretion in entering the 2019 modified custody order. **See D.K.**, 102 A.3d at 478.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date:  10/16/2019